IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| VANTAGE CONTROLS, INC., Plaintiff, vs. LUTRON ELECTRONICS CO., INC., Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO STRIKE EXPERTS AND MOTION FOR PROTECTIVE ORDER** Case No: 2:03 CV 488 TC District Judge Tena Campbell Magistrate Judge David Nuffer |
|---|---|

This case was initiated by Vantage, seeking declaration that its products do not infringe on Lutron's patents and for a finding of invalidity and unenforceablity of Lutron's patents. Lutron countersued for infringement.

Vantage claims Lutron's expert reports are duplicative and has moved[1] to strike the reports and for a protective order. Vantage asks the court to "(1) issue a protective order requiring Lutron to identify which expert will offer an opinion of infringement for each asserted patent claim and (2) strike the remaining expert reports."[2] This order denies the motion.

---

[1]Docket no. 211, filed November 18, 2005.

[2]Memorandum in Support of Motion to Strike Duplicative Expert Reports and for a Protective Order (Supporting Memorandum) at 8, docket no. 212, filed November 18, 2005.

Lutron designated the disputed experts to opine on infringement of the patents in suit. Vantage claims the "reports are entirely duplicative."[3] "For example, three reports contain the same opinions on Vantage's alleged infringement of the '442 and '103 patents. Likewise, two expert reports contain the same opinions on Vantage's alleged infringement of the '581 patent."[4] Vantage, concluding that these are "cumulative and bolstering opinions" which "the federal rules prohibit and the trial court will not permit,"[5] asked Lutron which witnesses it would call at trial, to avoid a "'shell game' and [flights] around the country for depositions in an already compressed expert discovery period."[6] Vantage says, "Lutron refused to make any such identification."[7]

In response, Lutron notes that "Vantage has designated nine (9) experts to provide testimony in this matter [while] Lutron has designated seven (7),"[8] thus blaming Vantage, the moving party, for the expert escalation. Lutron also points out that it did not bring this lawsuit, and that Vantage, by this suit, forced Lutron to bring compulsory infringement counterclaims. Lutron complains that by this motion, "Vantage now seeks to limit Lutron's ability to defend

---

[3]Supporting Memorandum at 2.

[4]*Id.*

[5]*Id.*

[6]*Id.*

[7]*Id.*

[8]*Id.* n.1.

itself" and prosecute its compulsory counterclaims.[9] Finally, Lutron points out that Vantage is not *required* to depose Lutron 's experts, and thus the expense of travel, deposition and expert fees is avoidable.

Four expert reports, all dated October 28, 2005, are in dispute. Each report concludes that Vantage infringes specific claims of Lutron's patents:

| | '442 patent claims | '103 patent claims | '581 patent claims |
|---|---|---|---|
| Robert C. Newman Jr.[10] | 1, 32, 62, 84, 151, 152, 155-157, 160 | 1-3, 5, 8, 9, 12, 22 | 1, 2, 4, 5, 15, 16, 18, 19, 23 |
| Dr. Arnold Lee Swindlehurst[11] | 1, 32, 62, 84, 151, 152, 155-157, 160 | 1-3, 5, 8, 9, 12, 22 | |
| Stuart Lipoff[12] | 1, 32, 62, 84, 151, 152, 155-157, 160 | 1-3, 5, 8, 9, 12, 22 | |
| Dr. Edward Red[13] | | | 1, 2, 4, 5, 15, 16, 18, 19, 23 |

**Case Law Presented by Parties**

The parties cite numerous cases which illustrate some principles pertinent to the issue. The only Tenth Circuit case[14] they cite reviewed a district judge's decision to exclude two experts as cumulative. The district court relied on a local rule which states that "[t]he parties are limited

---

[9]Lutron Electronics Co., Inc.'s Memorandum in Opposition to Plaintiff Vantage Controls, Inc.'s Motion to Strike Duplicative Expert Reports and for a Protective Order (Opposing Memorandum) at ii, docket no. 219, filed November 28, 2005.

[10]Report attached as Exhibit A to Supporting Memorandum.

[11]Report attached as Exhibit B to Supporting Memorandum.

[12]Report attached as Exhibit C to Supporting Memorandum.

[13]Report attached as Exhibit D to Supporting Memorandum.

[14]*Nalder v. West Park Hosp.*, 254 F.3d 1168 (10th Cir. 2001).

to the designation of one expert witness to testify for each particular field of expertise."[15] The trial court based its decision on the "overlapping *qualifications* of plaintiffs' experts and the mere possibility that duplicative testimony could result."[16] But the appellate court held that the trial court's application of the rule "ignores the complex causation issues in this case that necessitate expert witnesses with narrow, specialized areas of expertise." The appellate court found that there was no "specific overlapping or cumulative testimony,"[17] apparently adopting that as the definitive test. And while the exclusion was probably wrong, the appellate court said the trial court's decision was not "arbitrary, capricious, whimsical, or manifestly unreasonable."[18]

The parties cite two other appellate opinions. In one,[19] the appellate court affirmed the trial court's permission of four expert "witnesses [who] possessed expertise in the distinct areas of hematology, pulmonary medicine and critical care, infectious disease, and pathology" who "testified as to different aspects of [the decedent's] care and medical condition."[20] The "experts were used to rebut the testimony [that death resulted] from various causes, including sickle cell anemia, a bacterial infection, or a pulmonary infection." The appellate court reviewed the decision of the trial court for "abuse of discretion,"[21] and said that it would "not disturb a

---

[15]D. Wyo. Local Civ. R. 26.1(g)(1), formerly designated D. Wyo. Local Civ. R. 26.1(e)(1).

[16]*Nalder*, 254 F.3d at 1174.

[17]*Id.*

[18]*Id.* at 1175 (citations omitted).

[19]*Bowman v. Corrections Corp. of America*, 350 F.3d 537 (6th Cir. 2003).

[20]*Id.* at 547.

[21]*Id.*

discretionary decision on appeal unless it is unsupported in fact and results in substantial injustice to the aggrieved party."[22] It stated that "[a] district court is 'free to exclude any expert testimony, including testimony of an announced expert, if the testimony is cumulative or redundant under Fed. R. Evid. 403.'"[23]

The other[24] appellate decision only concluded that the denial of a second expert on a subject already within another expert's designation was not a "gross abuse of discretion resulting in fundamental unfairness in the trial of the case."[25] The generous standard of review which appellate courts give to trial courts' decisions on evidentiary issues means the opinions do not give much guidance to other trial courts.

Trial court decisions are similarly subject to broad factual variations with little substantive guidance. They represent articulated analysis but cannot be said to establish controlling standards.

In a case[26] when parties had "not yet completed expert depositions, much less trial preparation," the court declined to strike an expert. "It is simply impossible to foresee at this point what testimony the parties will actually seek to introduce at trial or in what context it will be presented."[27] The court was operating under a local rule which "permit[s] each side to put on

---

[22]*Id.*

[23]*Id.* (citing and quoting *In re Air Crash Disaster,* 86 F.3d 498, 527 (6th Cir.1996)).

[24]*Miner v. United States*, 94 F.3d 1127 (8th Cir. 1996).

[25]*Id.* at 1130 (citing and quoting *Derby v. Godfather's Pizza, Inc.,* 45 F.3d 1212, 1215 (8th Cir.1995)).

[26]*AUSA Life Ins. Co. v. Dwyer*, 899 F. Supp. 1200 (S.D.N.Y. 1995).

[27]*Id.* at 1203.

only one expert witness in any particular area of expertise . . . to eliminate duplicative testimony and to avoid giving an advantage to the side that can afford the most expert witnesses."[28] The court saw "very little overlap between [the two] reports,"[29] and declined to strike the expert.

At the other end of the spectrum, in a case where issues and the record were better defined, a trial court[30] partially granted a motion in limine to exclude "four experts, who will testify about the pharmaceuticals industry [who] served virtually identical five-page reports."[31] The reports did "not set forth the 'basis and reasons' for the experts' opinions, as is required by the . . . Pretrial Scheduling Order. Instead, the reports are rife with bald and unsupported conclusions."[32] The experts stated they based their opinions on the pleadings, discovery responses, and depositions in this case, but at the time of the reports *none* of the depositions had been transcribed and only one of the experts could have had access to written discovery answers because of a restrictive protective order. Thus, the stated foundations of the reports were specious. Most importantly, the reports' contents were deficient:

> The reports are uninformative, boilerplate renditions which offer nothing to distinguish the testimony of one expert from another--that is, apart from the expert's names and addresses. Moreover, the reports wholly fail to disclose, in any intelligible way, the facts and rationale which underlie the opinions expressed. As such, the reports provide virtually no assistance to opposing counsel in

---

[28]*Id.*

[29]*Id.*

[30]*Upsher-Smith Labs., Inc. v. Mylan Labs., Inc.*, 944 F. Supp. 1411 (D. Minn. 1996).

[31]*Id.* at 1437

[32]*Id.*

preparing to cross-examine [the] experts.[33]

The trial court had little difficulty limiting the number of experts to exclude three of those who filed these reports,[34] finding that the reports violated Fed. R. Civ. P. 26(a)(2), and that cumulative testimony would "impermissibly delay the just, speedy and inexpensive resolution of this action."[35] The court also relied on its ability to "limit or exclude expert testimony which is cumulative" under Fed. R. Evid. 403.[36]

In another trial level opinion[37] the parties cite, the court denied a motion to amend a scheduling order to permit designation of an additional damages expert for plaintiffs. Defendants moved to strike plaintiffs' designation on the grounds that the new witness "will testify on all the same topics on which plaintiffs' principal expert . . . plans to testify."[38]

Plaintiffs responded that

- Federal Rules of Evidence 702-706 provide that parties may call expert witnesses of their choosing;
- limiting experts because of mere numbers, without reference to the relevancy of their testimony, is an abuse of discretion;
- the experts had significantly different credentials and backgrounds; and

---

[33] *Id.* at 1440.

[34] *Id.*

[35] *Id.* (citing Fed. R. Civ. P. 1).

[36] *Id.*

[37] *In re Taxable Mun. Bond Securities Litigation*, Civ. A. No. 92-2684, MDL No. 863, 1994 WL 594270 (E.D. La. Oct. 28, 1994).

[38] *Id.* at *1.

- the foundations of their opinions were different.[39]

The trial court found that Fed. R. Evid. 403 allowed exclusion of cumulative experts and that courts also had this power at common law.[40] The court concluded that the expert reports were duplicative in giving opinions on four major issues.[41] Because one expert proposed to testify on one point not covered in the other's opinion, the court said that the expert could testify if restricted to that one point.

**Summary of Principles**

From these cases, some principles can be summarized:

- A party's right to present expert witnesses at trial is subject to the limitations of Fed. R. Evid. 403[42] and Fed. R. Civ. P. 1[43] and to the court's inherent powers.

---

[39] *Id.* at *1(citing and quoting *Padovani v. Bruchhausen,* 293 F.2d 546, 550 (2d Cir.1961).

[40] "[T]here was general agreement at common law that in order to avoid the presentation of cumulative evidence the trial court could limit the number of expert witnesses and character witnesses." *In re Taxable Mun. Bond Securities Litigation*, 1994 WL 594270, at *2 (citing 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure*, § 5220 (1978) (citing 6 Wigmore, *Evidence* § 1908 (3d ed. 1940)).

[41] Both experts testify that defendants failed to act with prudence by purchasing the bonds. Both experts testify that defendants failed to adequately diversify the pension fund portfolios under their management. Both experts testify that defendants failed to follow the pension fund's guidelines by investing in "BAA" rated bonds, by failing to diversify, by investing in securities issued by a non-rated issuer, and by investment in fixed income investments in excess of 5% of the portfolio if the investments were of "A rated" issuer and in excess of 10% if of an "AA rated" issuer. Finally, both experts testify that defendants failed to disclose to plaintiffs the "adverse character" of the bonds.

*In re Taxable Mun. Bond Securities Litigation*, 1994 WL 594270, at *2.

[42] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

[43] The rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

- Some courts have specific rules limiting expert witness designations. (Utah has no such rule.)
- In some cases, orders may limit expert witness designations. (There is no such order in this case.)
- The mere number of expert witnesses is no reason for exclusion.
- If the field of expertise of experts is identical, this *may* indicate that exclusion may be warranted. A court must be careful in its analysis of areas of expertise and alleged overlap.
- Duplicative reports indicate testimony may be duplicative, cumulative and excludable.
- Experts whose testimony is truly cumulative should be excluded.
- It is easier to make decisions about expert witnesses closer to trial. Each step of trial preparation – including designation, disclosure and deposition – enables the analysis.

**Discussion**

The qualifications of the proposed experts seem similar at first impression:

| | Education | Licenses | Employment |
|---|---|---|---|
| Robert C. Newman Jr.[44] | BS, Electrical Engineering | Professional Engineer, PA | Lutron, Lutron Fellow (review and evaluation of new products and technologies)<br><br>Consultant, 2001-2005<br><br>1986-2001, various positions |
| Dr. Arnold Lee Swindlehurst[45] | BS, MS, PhD, Electrical Engineering | | BYU, Professor and Chairman of Dept of Electrical Engineering |

[44]Report attached as Exhibit A to Supporting Memorandum.

[45]Report attached as Exhibit B to Supporting Memorandum.

| | Education | Licenses | Employment |
|---|---|---|---|
| Stuart Lipoff[46] | BS, Electrical Engineering and Engineering Physics, MS and MBA | Professional Engineer, MA<br><br>General Radiotelephone License | Private Consultant, design, development, procurement and use of advanced communications technology |
| Dr. Edward Red[47] | BA, BS, PhD, Mechanical Engineering | | BYU, Professor, Mechanical Engineering Department |

However, each expert has differentiating characteristics. As a long time employee of Lutron, Mr. Newman speaks from the practical industry perspective and with the most intimate knowledge of Lutron's products. He has published one article and has never taught.[48]

By contrast, Dr. Swindlehurst works in academia, and has published over 90 times in the last decade. His relationship with Lutron is two months old.[49]

Another perspective is provided by Mr. Lipoff, who has always worked in private consulting. His specialties include systems analysis, circuit analysis, wireless communications and remote sensing. He has also published widely.[50]

Dr. Red has principally been active in academia, has been involved in patent processes and "in research that applies direct control to home and building devices. Two patents pertaining

---

[46]Report attached as Exhibit C to Supporting Memorandum.

[47]Report attached as Exhibit D to Supporting Memorandum.

[48]Report attached as Exhibit A to Supporting Memorandum at 1-2.

[49]Report attached as Exhibit B to Supporting Memorandum at 2.

[50]Report attached as Exhibit C to Supporting Memorandum at 2.

to that research are currently being processed."[51] He also has practical home construction experience. He has consulted for many commercial enterprises, has taught at many institutions and has supervised many students.[52]

The reports duplicate each other as to subject matter. But reading each report shows that they are unique and none can be said to duplicate another in language, in spite of similar conclusions. This is not a case in which the *substance* of the reports is cumulative, though their *conclusions* might be.

The depositions of these experts have not yet been taken (to the court's knowledge). Vantage's desire to reduce discovery cost is laudable, but the depositions of these experts will certainly shed more light on any cumulative nature of the testimony. The trial judge will then be in a better decision to evaluate the suitability of the expert testimony at trial. After all, Fed. R. Evid. 403 is a rule preventing cumulative testimony *at trial*, not the giving of cumulative testimony in reports or deposition.

Further, the court has not yet entered a claim construction order. At this point, striking an expert might be preliminary.

In consideration of the factors outlined in the case law cited, striking the expert designations would be inappropriate.

---

[51]Report attached as Exhibit D to Supporting Memorandum at 3.

[52]*Id.* at 2.

**ORDER**

IT IS HEREBY ORDERED that the motion[53] to strike and for a protective order is DENIED.

Dated this 5th day of December, 2005.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge

[53] Docket no. 211, filed November 18, 2005.